Mr. Mazza, before you begin, I want to clarify one thing with Mr. Bauer. Mr. Mazza, we're ready to hear from you. Good morning and welcome. Good morning, Your Honors. Thank you. Unlike the previous appeal that we just heard, there's no stoppage in here. We have a situation where the summary of the invention concerning the term ready for mounting, we felt controlled the decision below. But uncharacteristically, the summary of the invention was put aside and the preferred body was given the controlling authority. The term ready for mounting was described to include fitting and etching and cementing and was found to therefore exclude finishing steps. And on summary judgment, the district court found an infringement. What do you understand to be the division line between fitting and finishing? When am I doing fitting type tasks and when am I doing finishing type tasks? That's a great question. What's the answer? Well, I think the answer is that every time that fitting is done, finishing is also done. For example, you may have some experience of a veneer. When a veneer is spaced or sized, it may skyrocket a portion of the tooth or bevel it. And every time they do that, they're performing a fitting operation to make sure it's fitting properly. But they also perform a simultaneous finishing operation to polish it and smooth it down. And the unreported evidence from those of ordinary skill in the art that we cited shows that at A1343, paragraph 8, et cetera. Could you do that again? Sure. A1343, paragraph 8. A1359 and 1360, paragraph 20. A3723, paragraph 9 and 10. And last slide, I'm sorry. A3739-4, paragraphs 9-11. That's the unreported evidence from those of ordinary skill in the art. The people who actually make and use these inventions. The invention, after all, is the fabrication of porcelain veneers. And a dentist and a dental lab technician, the people who actually make these in a remote lab and then send them to the dentist for fabrication and preparation and modeling of the tooth, have said that. I mean, for construction, is any finishing or fitting step not allowed when it's ready for modeling? I think that's fair. My question is, is there any step? Oh, no. Yes. Not really. I mean, the people of ordinary skill in the art have said that in every veneer fabrication. So what does ready for modeling mean? Isn't that term superficial? Isn't it a claim? Anything that came before can also come after? Well, no. And if I could, let's examine the claim language to answer your question directly. The claim language is, this is 833, column 2, line 5. Eroding away said statue from said porcelain veneer restoration, leaving said restoration, leaving said veneer ready for modeling. So in other words, you've removed the statue from the veneer. And now it's in a condition that will allow this mounting process to begin. And the patent is very clear that the mounting process has multiple steps. You have to finish. You have to fit. You have to etch. You have to clean. You have to glaze. You have to mount. Now, the district court agreed. The appeals agreed. We all agreed that the mounting was a process. But we believe that the district court arbitrarily said, you can fit in that process, but you can't finish. And the reasoning that the district court was led to that result was the column 4 disclosure. What I'd like to do first is, why does the column 4 disclosure, particularly the reference in column 4 to the fact that the support provided by the statue with the casing still mounted was treated as a feature of this invention? Why is that language not significant and properly applied to these claims? Well, I think it's an example, but it's a non-nonexample. The word may is used as a non-nonexample. And if you look at the totality of the patent here, you have the column 2, which we'll get to in a second, which is very clear, we believe. And then you have column 4 that says you can do it this way if you use the word may. But again, as in the last case, you have a claim that was prior to the exam. And you have claim 5, which was a much broader claim, not limited in any way to the limitation that we're discussing. And that claim was canceled during reexamination. So the fact that claim 1 may be construed as a narrower, covering a narrower body rather than the broader concept is not inconsistent with the record. From what I've heard of the argument, which I thought was very well done, I think that case is very different. Because claim 5 here in the reasoning that it was amended had nothing to do with the right for modern communication. The right for modern communication is never an issue in terms of distinguishing hierarchies. No, it's not. I understand that. But the argument that, well, the material in column 4 can't relate to the invention, that's only an embodiment. The invention is described in the earlier text, is explained by the fact that originally there were claims that were broader, that covered a broader concept, and that claim 1 doesn't necessarily require that it cover all of those broad concepts, but very well could be limited to a particular embodiment. And I think that's what the district court simply said, that, well, maybe you have a disclosure that discloses a broader concept elsewhere in the text, but in column 4 you're describing a specific embodiment, and that's what claim 1 covers. Well, column 4 is not as limiting as it seems at first glance. All that column 4 says is that we can provide finishing operations using the statute of support. You can do that. Nothing wrong with that. But as people of learning and skill have shown, you have to perform finishing and fitting operations after the statute is removed and the veneer is now put on the tooth. You have to do it. You can't take this remote veneer that's been fabricated in a laboratory a hundred miles away and then send it to the dentist, and the dentist is going to immediately put it on the tooth. It doesn't happen that way. And in the column 2 disclosure, if I could just read that, it's very clear. Column 2 is at 827. This is the summary of the invention, and it begins at line 54. Well, excuse me, at line 49, it first says that after cloning the statute is removed. And then at line 54 it says the veneer casing produced by this process is then touched up to smooth all edges and remove all visible undercuts. Touching up is a clear reference, and smoothing edges is a clear reference to a finishing operation. In fact, column 4 confirms that because column 4, 828, at line 50, et cetera, excuse me, excuse me, at line 48, once the veneer casing is finished, the next step is to remove the statute. And above, in column 4, line 40, it says it refers to finishing treatments as at line 42, babbling in size alike, babbling. Well, let me ask you, I'm confused. What confuses me about this case is it seems to me that even if we rely on the description that you're just referring to now, the summary of the invention, what is described here seems to me to be very, very narrow. I mean, the only reference here seems to be to minor aesthetic steps. So I guess my view is that even if the district court had construed the claim ready for mounting to say precisely what it is in the summary of the invention, I think the result would have been the same here. I mean, you're dealing with an accused device which represents major structural changes. So I guess I've been confused all along not seeing the difference between column 4 and column 2 because I think under either you reach the same result. Thank you for asking that question. Good question. The reason that the invention was an advance, and it becomes clear from the final issue in terms of how this was distinguished over prior art, was this idea that you could somehow remove the statute from the veneer by using, for example, glass beads or other particles that were harder than the statute, but less hard than the veneer. And that was an advance. And it was distinguished over prior art. And that was in the original claims, original claim 5. And it made it into the law of claims as an issued patent. And it continues the reexamination. So if you look at claim 1 on reexamination, it says in limitation E, eroding away such statute from the veneer. That was what distinguished it over prior art. In fact, in this case, it was before this court in 1997, the appellee at that time argued that there was a Calamia reference that somehow made this claim obvious. And the court agreed that Calamia was distinguishable based on this eroding away statute. So that was the, if I answered your question, that was the distinguishing characteristic that always was in the claim. Now, I think it's very important here. We don't necessarily think there's ambiguity for the reason I said. In column 4, it says you can do finishing while the statute is on the veneer, but you need not. It says may. The people who are still unreported on the sites I just gave, Chief Judge Michelle, say that you can do, you must do finishing after the veneer is, after the statute is removed. But if you look at the file history at 8461, that's a clear indication that the column 2 disclosure is the controlling and correct disclosure. Because at 8461, the inventor explains that in my invention, you can use a sandblaster, for example, to remove the refractory material. That's the statute, but it's step 24. And then you can perform finishing operations. The rough edges can be trimmed. All visible undercut should be removed, et cetera, et cetera. And people who are in this case have corroborated that those are finishing operations that are performed after the statute is removed. Even if you're right about that, it's not so clear to me that that is sufficient for you to overcome the summary judgment. Because it looks to me like the term ready for mounting could have been construed to mean basic shape and dimensions are settled, fixed. But in the acute process, the sprue is part of the shape of the porcelain as it comes out of the earlier steps in the process. So even if the statute was wrong and we substitute a different corrected construction, you may still lose. Your Honor, I would respectfully disagree, because the patent in the file that's in the contingent record makes it clear that all we're talking about here is removing excess porcelain. And when you cut that sprue, which takes 822.72 in the record, it shows it takes about a second. When you cut that sprue up, all you're doing is removing excess porcelain. It may be that it's very fast, and it may be that it can be done with the same tool that does other finishing. But if you focus on structure, the structure of a veneer that still has the sprue portion integral to it certainly looks very different than the structure of the finished veneer that's going to go on it too. I agree, it does aesthetically look different, but all we're doing, that porcelain post is just an avenue or passageway to allow the wax from the impression to leave. And all you're doing is removing, in a very quick step, removing excess porcelain. And once you've removed it, you then polish it. And the removal of the sprue is a fitting step that everyone agrees is part of mine. And when you polish where that removal came from, that's a finishing step. That's what's perhaps debatable. It's reshaping the veneer, one could argue, rather than just smoothing off some tiny little excess bump on the otherwise curved surface. We could debate that. But I guess my point is, we don't have to debate it. Because the district court here never made any demarcation, never delineated what was meant by fitting on the one hand and finishing on the other. Now we gave her evidence that finishing and fitting were always done together. And the sites I just gave you, people who are going to still explain that. But we feel it's arbitrary for her to say, well fitting is part of mine, and somehow finishing is a part of mine. Do you agree, Mr. Mazza, that we can construct a definition here ourselves based on the record before us? Well, of course. We don't have to send it back to her and tell her, well you were wrong in this and that respect. Do it over and then have another review. We could just substitute, can't we? Our construction for her. To be intellectually honest, if your definition somehow delineated some difference substantively between fitting and finishing, it's possible that that so crafted definition might have to go back for some factual findings. We don't think that would be consistent. I'm not suggesting redefining her definition. I'm suggesting a substitute claim construction. And I'm just asking whether you agree that that's within our powers as an appellate panel to do. I do, Your Honor. I think that the contextual record here would permit that. All right. Let's hear from Mr. Abbott. Thank you, Your Honor. Thank you. We'll give you back just some rebuttal time. Thank you. Thank you, Your Honor. I know the court doesn't often get a lot of examples, but a finished veneer, and we have a board that we're happy to leave with, Your Honor. We had a full tutorial. A finished veneer is ready for mounting. It's glazed. It's stained. It's colored. It's finished. The judge found there might be some subsequent things. Touch up. You know, little things that need to be fixed. Well, let me ask you about that. I mean, that's what Judge Michel was just referring to and I referred to earlier. That description of what's allowed afterwards in the summary of the invention, and you agree, is fine. Right. I mean, it allows for a touch-up to smooth edges, remove all visible undercuts, and, again, if desired, glaze and maybe add. The summary of the invention, now the description there, is perhaps a little inconsistent with the rest of the description. When you say the veneer casing produced by, it's been touched up to smooth all edges. That's right. That element can be done afterwards. Without any question, there can be some touch-up. And Judge Kendall found some touch-up. But what we're talking about, what comes out, this, if Your Honors will want to see it, this is what comes out. That's the raw ceramic. It hasn't been glazed. It hasn't been stained. It's on the sprue. This thing is not ready for mounting. This is ready for mounting, plus maybe the touch-up. The issues of etching and cementing are not part of the— So what's the key difference? Because some structural change is required on that in order to be ready for mounting. How do we articulate what the difference is between those two in terms of ready for mounting? Your Honor, that's where we then get to go to the specification. All right? And the best place you have ready for mounting, and I do want to make clear, this isn't adding an element to the claim. Ready for mounting is in the claim. And as I think as Judge Lynn or maybe Judge Michelle, it's not in Claims 5 and 7. There is no ready for mounting limitation there. Those claims go to eroding and then giving it to the dentist, essentially, for mounting. Those claims were canceled. But when you ask where's the limitation, the best places to look are the two in the detailed specification when you have a question. And you have two places in that detailed specification. First, you have the conferred line, which makes it clear that you don't remove until after it's glazed. All right? This is column 4, line 45 through 50. It talks about 44. It talks about glaze may be added. Remember, they're putting this veneer on the statute so they can do the finishing. So glaze may be added. And then what it says at 47, once the veneer casing is finished to the satisfaction of the professional, finished, the next step is to remove it from the statute. Wait, I'm not following. Where is what you just read? Column 4, line 47. Once the veneer casing is finished to the satisfaction of the professional. Finished. Now, in honor of the proposal that they make for that definition, their definition, and this is important, is that it be done other than finished. So if you look at their proposal, they say the statute has been eroded substantially. And the veneer is substantially fabricated other than finished. They're completely trying to wipe out that entire element. This is after it's finished. Their construction is before it's finished. Now, there's a second place you're honoring. Well, they're just saying that it's one of the embodiments, which is where it's listed. You know, if you heard the case beforehand, the argument was that under the summary, it was still just kind of a preferred embodiment example. Here, this is listed under preferred embodiment. It's the only embodiment you honor. Right. It's the only embodiment. But, you know, there's a second place. They have a detailed example. And this is on columns 5 and 6. So they have the preferred embodiment, the lawyers talk. And then in example 5, and I point this out because they keep talking about the person of skill and the art saying nobody would do this. Well, example 5 says porcelain veneers have been fabricated and mounted in accordance with the principles of this invention. And what is it that they talk about? And this is where Ready for Mounting gets defined. And I do need to mention Ready for Mounting never appears in the specification. It's only in claim 1. But the closest language to Ready for Mounting is step 10, the last step of the example. This is on column 6, line 3. And this is after glazing. Right. Glazing is step 9. Glazing is the thing that makes it ready for fitting. So they do the glazing on step 9. And then step 10 is the investment material is removed from the casings by blasting the material with air under pressure, eroding away the material, leaving the casings ready to be fitted and cemented on the teeth. That is the closest language to Ready for Mounting in the entire patent. And that's the definition, Judge Pendleton. Are you saying that it means the glazing always has to be done before the statute is eroded? Within this claim. I mean, physically, if you look at claim 5 or 7, which have been canceled, there's no limitation there. We're limiting ourselves to the claim that it's a limitation when it's canceled. Okay. So that's what, if Your Honor is asking, does the dentist have to do the glazing before or after? No. The dentist can take, I mean, we erode, and then they glaze. But if the claim requires that it be eroded and ready for mounting, it requires that the glazing be done before. How do we know that? Because the two detailed examples in here show that. The detailed description says, again, this is column 4, a glaze is added. And then, this is column 4, line 39, a glaze may be added. This is the example. And then at 48, once the veneer is finished, finished, that means ready for mounting. The next step is to remove the veneer from the statute. This is accomplished by blasting it away. So in the detailed description, you add the glaze, you fire it. This is a glaze, if you don't mind. I'm not sure I'm following, but you seem to be saying that the one and only preferred embodiment necessarily limits the scope of the claim line. That isn't always true. No, Your Honor, I'm not suggesting that. What I'm suggesting is you're having the claim, the phrase, ready for mounting. Sure. That's there. Okay. What does ready for mounting mean? We start with the ordinary words. Ready means now. Mounting, what does mounting mean? Mounting means affixing to the tooth. Those are the ordinary words. We could have stopped there. The judge could have used the ordinary definitions. But we didn't, because there is teaching here, and we do want to look at the teaching. The teaching of what does ready for mounting mean, we go to the patent. We don't find the words ready for mounting in the patent, but we see two detailed descriptions. One says you do the glazing, and then until it's finished, right? When the veneer is finished, you remove it. But you seem to be suggesting that the scope of the claim has to be limited to what's shown in one of the two embodiments. I'm not, Your Honor. Well, I don't understand what you're saying. Well, what I'm saying is if you need to understand what ready for mounting means... That's all we need to do. All right. So let's look at the detailed spec to see if we can discern what the term means. I mean, the words are English words, ready for mounting. Ready to be fitted to the teeth. Well, but what you're quoting me from in columns five and six is an example. Well, that's... Not necessarily co-terminus, but the scope of what the claim language could cover. But it's the only example, Your Honor. There's one thing I... So, I mean, we have lots of cases where there's one preferred embodiment and only one embodiment. Right. There's broader claim language, and we give effect to the broader claim language and reject many arguments saying, no, you have to limit it to what the only embodiment shows. But, Your Honor, we're trying to understand... I don't understand what's different between that circumstance and what you're asking me to do here. Because, Your Honor, if you interpret it to allow things like glazing and staining to take place afterwards, then you're writing out the ready for mounting limitation entirely on the claim. It depends what ready for mounting means. Well, then ready for mounting means the English definitions of the word. Ready for fitting. But, Your Honor, it's... There's a number of different ways. How ready is ready? How ready is ready. Is it enough that you form the essential shape of the veneer, that is, the interior shape and the exterior shape, which, of course, the accused structures do? Is that enough? Does it have to be screw-free, polished, et cetera, glazed, et cetera? How ready does it have to be when the claim only says ready for mounting? Right. And so we need, then, to say what is ready for mounting? It's the phrase that comes out of Column 6 that says ready for fitting. This is why we have the claim construction. We could just go to the jury and say ready for mounting and give them this general question. Is it ready for mounting? Let's get a bunch of dentists to explain it. But we've asked the judge below and here to give it a little more substance, a little more definition. And the definition comes out of Column 6 where they say after it's finished. This is Column 6 at Line 5. After it's finished, the casings are ready to be fitted and cemented. And we suggest, Your Honors, that that is synonymous. Ready to be fitted and cemented is synonymous with ready for mounting. Now, Your Honors, there's one point that may not have been clear enough to read that I do want to make to you, and that is this example in the summary in 2 and whether that might be contradictory or inconsistent. And the reason I need to make this clear is because it might or might not read on Claims 5 and 7, which have been canceled, which didn't have the limitation. Judge Kendall said if you read it, it's not clear that it needs to be in that order, that both those paragraphs could be referring to what takes place after baking. But, Your Honors, here's what's very important. In the reexamination, after they cancel in 5 and 7, after they cancel those, in the reexamination, this is at Appendix 574 and 575, there's a section titled the Claims Method. And this is where they're arguing on the appeal to the reexamination, in the reexamination, the Claims Method. And then it goes through the Claims Method. The Claim Method solved a longstanding problem. And in that, on page 575, they take those two paragraphs from Column 2 and flip them around. It's word for word the same language, word for word, the language that is in Column 2, from lines 49 down to 60, that they say is the alternative embodiment. And when they get to the patent office and they describe the invention, the Claims Method, they describe it as the casing produced is touched up to smooth all edges and remove all visible undercuts, and, if desired, a glazing may be added. After cooling, the statute is then removed from the porcelain veneer by blasting. That's how they told the patent office the claim convention is. So the question is, did the district court get the claim construction right? We have three places in the file and the file history that are clear in terms of the order. We have a descriptive, confirmed embodiment. We have an example. And we have what they told the patent office on the re-exam. Crystal clear as to what they see the order as. The only argument that they make to suggest that the district court got it wrong, the only argument is that, one, in the summary of the invention, there's an ambiguous, maybe contradictory statement. Second, that the inventor, every time Mr. Mazza talks about those orders, he's talking about the inventor today, talking about what people were doing. What we have here, Your Honor, is an effort to read the— and, by the way, the inventor said people today wouldn't ever do this. What we have here is the inventor trying to read the claim to cover what the accused product is, rather than trying to read the claim in the context of the patent. And remember, Your Honor, the proposal that they make doesn't cover the confirmed embodiment. They're saying forget about the confirmed embodiment, the detailed description, what we told the patent office. And, by the way, we submitted the book that the inventor wrote in 1990 that described all the detail. Every single piece of contemporaneous evidence shows that the intent here was you do all the finishing before you remove it from the statute. Except for minor touch-ups. Except for minor touch-ups. And Judge Kendall agreed to that. Well, I mean, she puts that in—it's not in the actual definition, but it's within her report. All right. Thank you. Mr. Mazza, we're going to discuss some of the level time in the third half minutes. I'd like to look at the blue group pretty quickly. Page 20. This is our proposed construction. The statute, if I could read it. The statute's been eroded from the veneer. The veneer is substantially refabricated, other than finishing and fitting operations in Part I and Part II. In other words, the general topography, size, and shape of that veneer is fixed in place based on the impression and based on the statute that was provided. But there may be finishing and fitting operations that are necessary. Now, Judge Prost just asked—I think there was a question there, too. Does it have to be minor? Okay, well, I think Column 2 answers that question. It says removing all visible undercuts. The evidence of record here is that that's not necessarily minor. An undercut can be fairly major. It's not going to change the overall shape, but it can be fairly major. That can be a significant alteration. There were some tests—we're not just removing the undercut. There's also Dave Andrews, a dental lab technician at the sites I gave you that you've judged. It's clear that the English definition of right of remodeling isn't going to cut it here. We're including process steps like fitting and glazing and that chain of many. I mean, the normal English definition of modeling would be perhaps just cementation. But it's obvious that's not what's happening here. Is there a major structural change that's required? Well, we'd submit—I mean, look at that veneer as it's on the post. The veneer's shape is completely fixed in place. That veneer is done. The only thing that needs to be done is there's spur removal that needs to be chopped off at the end. That is very similar to removing visible undercuts, completely consistent with the Com2Sum review we'd suggest. All right. Well, thank you, Bruce. We'll take these bills under the bus.